OPINION
{¶ 1} Jeffrey Antonio Brown was convicted of several offenses, including felonious assault and aggravated burglary, following a jury trial in the Montgomery County Court of Common Pleas. He appeals from his convictions and sentences.
 {¶ 2} On August 9, 2005, Brown was indicted for aggravated robbery and two counts *Page 2 
of felonious assault. He pled not guilty. On December 2, 2005, Brown was reindicted for aggravated robbery, two counts of felonious assault, having a weapon while under disability, kidnapping, aggravated burglary, and tampering with evidence. In the second indictment, the aggravated robbery, felonious assault, kidnapping, and aggravated burglary counts each contained a firearm specification. Shortly thereafter, Brown filed a motion to dismiss on the basis that his right to a speedy trial had been violated. Brown also filed a motion to suppress identification evidence. Both motions were overruled. Brown was tried by a jury on February 6-9, 2006.
 {¶ 3} The state's evidence at trial established that the victim, John Tindull, was acquainted with Amy Goens, and that the two had "hung out" at the Dayton Motor Motel on North Keowee Street together on Sunday, May 15, 2005. Both Tindull and Goens used crack cocaine. Goens left the hotel after a fight with Tindull and wandered around other hotels in the area.
 {¶ 4} In the early morning hours of May 16, Goens crossed paths with Brown, who was an acquaintance of hers but whom she had not seen for a few years. Goens believed that Brown had a gun because she felt a hard object when he greeted her with a hug. Brown told Goens that he was "going to get a lick," which she understood to mean that he would get money or drugs by whatever means necessary. Brown led Goens to the Dayton Motor Motel and told her to knock on the door to Room 4, Tindull's room. According to Goens, she resisted, but Brown forced her to knock. Brown remained out of sight when Tindull looked out of his window. Seeing Goens, Tindull opened the door, whereupon Brown forced his way into the room. Brown ordered Tindull to the floor and put a pillow over his head. When Tindull fought back, Brown shot him *Page 3 
three times. Goens fled through a window, but she did not go to the police.
 {¶ 5} Brown encountered Goens on the street a short time later, grabbed her, and led her to a garage where his car was parked. Both changed out of their bloody clothes, and Brown described his plan for destroying the evidence on the clothes. Goens later seized an opportunity to flee from Brown. Later that night, Brown admitted to Malissa McLain that he had shot someone at the Dayton Motor Motel earlier in the day.
 {¶ 6} An anonymous tip led the police to Brown. Although Tindull was unable to identify Brown from a photographic array prepared by the police, he did lead the police to Goens. Goens identified Brown from the photo array as the man who had shot Tindull. Tindull subsequently identified Brown at the preliminary hearing.
 {¶ 7} At trial, Brown was found not guilty of aggravated robbery and kidnapping. He was found guilty of both counts of felonious assault and of aggravated burglary, with the attendant firearm specifications, of having a weapon while under disabilty, and of tampering with evidence. Brown subsequently filed motions for a new trial and for acquittal. The trial court sustained the motion for acquittal with respect to the conviction for tampering with evidence, but it overruled the motion for acquittal in all other respects and overruled the motion for a new trial. The court sentenced Brown to eight years of imprisonment on each count of felonious assault and to five years for having a weapon under disability, all to be served concurrently. The court also sentenced Brown to eight years for aggravated burglary to be served consecutively to the other sentences. The court merged the firearm specifications into one three-year term to be served prior and consecutive to the other sentences. Thus, the aggregate sentence was nineteen years of imprisonment. *Page 4 
 {¶ 8} Brown raises six assignments of error on appeal.
 {¶ 9} I. "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO DISMISS IN CONTRADICTION TO OHIO'S SPEEDY TRIAL STATUTE"
 {¶ 10} Brown asserts that the state was required to bring him to trial within 90 days pursuant to R.C. 2945.71, but that he was held in jail for 106 days before trial. As such, he claims that his convictions should be vacated.
 {¶ 11} The events that gave rise to the indictments in this case occurred on May 16, 2005. Brown was arrested for possession of crack cocaine on May 18, 2005 (Case No. 2005 CR 1469), and he remained in jail thereafter. Brown was indicted on the aggravated robbery and felonious assault charges on August 9, 2005. Brown's trial on the charges presented in this case began on February 6, 2006. The possession charge was dismissed on March 14, 2006.
 {¶ 12} R.C. 2945.71(C)(2) and (E) require the state to bring a felony defendant to trial within 270 days of arrest or within 90 days if the defendant is held in jail in lieu of bail on the pending charge. The "triple count" provision of R.C. 2945.71(E) applies only when the defendant is being held in jail solely on the pending charge. State v.Sanchez,110 Ohio St.3d 274, 276-277, 2006-Ohio-4478, 853 N.E.2d 283, citing State v. MacDonald (1976), 48 Ohio St.2d 66, 357 N.E.2d 40, paragraph one of the syllabus. Thus, the triple-count provision does not apply when a defendant is being held in custody pursuant to other charges. Id.
 {¶ 13} At all relevant times, Brown was in jail on possession charges as well as the charges presented in this case. The "triple count" provision of R.C. 2945.71(E) did not apply because Brown was not "held in jail solely on the pending charge," and the state had 270 days to bring him to trial. Even without accounting for the time tolled by Brown's motions, it is clear *Page 5 
 {¶ 14} The first assignment of error is overruled.
 {¶ 15} II. "THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS THE PRETRIAL IDENTIFICATION."
 {¶ 16} Brown contends that the victim's identification of him at the preliminary hearing was unduly suggestive "because he was the only person in the courtroom wearing jail attire" and because the victim, John Tindull, previously had been unable to identify him. The state asserts that the identification was sufficiently reliable to be admissible at trial. In the alternative, the state contends that any error in the admission of the identification testimony was harmless beyond a reasonable doubt because a second witness also identified Brown as the shooter.
 {¶ 17} At the suppression hearing, homicide detective Christen Beane testified for the state. Beane testified that he created a photospread including Brown's photo based on a tip from an anonymous person familiar with Brown. The other five photos in the array were selected based on similar physical characteristics, and the photos were arranged randomly by the computer. Beane then showed this array to several people, including Tindull, the victim. Tindull was shown the photospread within one week of the attack while he was still in the hospital. Tindull was unable to identify anyone in the photospread. Several months later, Tindull identified Brown in person at the preliminary hearing.
 {¶ 18} Due process requires suppression of an identification, whether made in court or out of court, if the confrontation procedure was "unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." Manson v. Brathwaite
(1977), 432 U.S. 98, 116, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140; State v.Luna, Lucas App. No. L-05-1245, 2006-Ohio-5907, ¶ 24. *Page 6 
"In the context of eyewitness identification testimony, an impermissibly suggestive identification procedure will be suppressed due to the substantial likelihood of irreparable misidentification."Neil v. Biggers (1972), 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401;State v. Marbury, Franklin App. 03AP-233, 2004-Ohio-3373, ¶ 56. "It is the likelihood of misidentification which violates a defendant's right to due process * * *." Biggers, 409 U.S. at 198. Thus, "reliability is the linchpin in determining the admissibility of identification testimony." Manson, 432 U.S. at 114.
 {¶ 19} An in-court identification typically occurs under circumstances that suggest the identity of the defendant. State v. Johnson,163 Ohio App.3d 132, 2005-Ohio-4243, 836 N.E.2d 1243, ¶ 55. However, such an identification may nonetheless possess sufficient indicia of reliability to comply with due process. Id. Suggestive out-of-court procedures, which could have possibly invalidated the in-court identification, were absent from this case because Tindull had been unable to identify Brown from the photospread presented to him by the police shortly after the attack. Moreover, Tindull's identification was made under oath, in court, and was subject to cross-examination. Tindull's inability or unwillingness to make an identification based on the photo array did not discredit his in-court identification of Brown, and there was no other basis to conclude that his in-court identification was unreliable. See id. at ¶ 57. As such, the trial court did not abuse its discretion in concluding that there were "no constitutional defects" in the identification testimony and in refusing to suppress it.
 {¶ 20} The state's argument that, even if Tindull's identification testimony was unreliable, any error in refusing to suppress that evidence was harmless due to the identification testimony offered by other witnesses is also persuasive. However, in light of our finding that *Page 7 
Tindull's testimony was not unreliable, we need not discuss this alternative argument.
 {¶ 21} The second assignment of error is overruled.
 {¶ 22} III. "THE TRIAL COURT COMMITTED ABUSE OF DISCRETION."
 {¶ 23} Brown asserts that the trial court abused its discretion in refusing to allow expert testimony to rebut the testimony of one witness about the effect of crack cocaine on her ability to perceive the events around her. The state responds that Brown had not laid an adequate foundation for the expert testimony and did not show that its probative value outweighed the potential for prejudice. We note that several key witnesses admitted to drug use during the course of the events in question, but that Brown's effort to refute witnesses' accounts through expert testimony was focused solely on the testimony of Malissa McLain .
 {¶ 24} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. State v. Haines 112 Ohio St.3d 393, 402,2006-Ohio-6711, 860 N.E.2d 91, ¶ 50; State v. Jones, 90 Ohio St.3d 403,414, 2000-Ohio-187, 739 N.E.2d 300.
 {¶ 25} McLain testified for the state. She stated that she knew Brown prior to May 16, 2005, through a "drug association." She had been in the vicinity of the Dayton Motor Motel in the early morning hours of May 16, where she had observed the commotion of a police investigation. She testified that, later the same day, she had encountered Brown at a different hotel and had asked him whether he had seen what happened at the Dayton Motor Motel the previous morning. Brown responded that he had "had to pop a cap in somebody's ass" at the motel that morning, meaning that he had shot someone. McLain admitted that she had been using drugs that day but asserted that the drugs had not affected her ability to perceive events. *Page 8 
 {¶ 26} In the midst of the trial, Brown wanted to subpoena an expert from the Montgomery County Coroner's Office to rebut McLain's testimony by testifying about her "ability to identify, view, relate, talk, and be able to recognize what was going on" at the time of the events about which she had testified in light of her admitted drug use that day. Brown's attorney did not identify or speak with this person before trial, and no one from the coroner's office was present in the courtroom. During and at the end of the state's case-in-chief, Brown's attorney requested that he be allowed to obtain an expert, and the state objected. In effect, this request amounted to a request for a continuance. The court sustained the state's objection to calling the expert witness. It reasoned that there were "just too many variables" related to McLain's size, food consumption, and drug use about which no evidence had been presented for the expert to form a meaningful opinion, and it expressed skepticism that the expert would even be able to give an opinion.
 {¶ 27} In our view, the trial court reasonably refused Brown's request for additional time to obtain expert testimony about the effects of drugs on McLain's ability to perceive events. As the trial court implied in its ruling, the anticipated benefit of the testimony was speculative. Moreover, it is clear that Brown's request would have necessitated a delay in the trial because the defense had not yet talked with or even identified the expert. Under these circumstances, the trial court did not abuse its discretion in refusing to permit the expert testimony, and we will not disturb its ruling on appeal.
 {¶ 28} The third assignment of error is overruled.
 {¶ 29} IV. "APPELLANT WAS DENIED DUE PROCESS, AS THE VERDICT WAS AGAINST THE SUFFICIENCY AND/OR MANIFEST WEIGHT OF THE *Page 9 
EVIDENCE."
 {¶ 30} Brown contends that the verdicts in his case were inconsistent in that he was found guilty of the firearm specifications attached to the felonious assault counts, but not guilty of the specification attached to the burglary count, all of which stemmed from the same circumstances. With respect to this argument, Brown is simply mistaken as to the jury's findings. The jury found that Brown did have a firearm on his person at the time of the aggravated burglary, as well as the felonious assaults. Because the alleged inconsistency does not exist, it does not create a due process problem.
 {¶ 31} Additionally, Brown argues that the testimony of one key witness, Amy Goens, was too unreliable to support the verdict because she had used drugs the day of the attack and did not make any effort to contact law enforcement after the alleged attack. He also asserts that Tindull's testimony was unreliable due to drug use and his inability to identify Brown as his attacker before trial.
 {¶ 32} The trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses." As such, we must afford substantial deference to its determinations of credibility. Urbana v.Locke, Champaign App. No. 2005 CA 40, 2006-Ohio-6606, ¶ 17; State v.Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 33} Goens was questioned thoroughly about her drug usage and about her reason for not reporting Brown to the police after the shooting. She also testified that she was not under the influence of drugs at trial and had not used drugs for several months. The jury was in the best position to assess the truthfulness of this testimony *Page 10 
and the extent to which Goens' drug usage may have affected her perceptions on the day of the shooting. Likewise, the jury could assess the credibility of Goens' claim that she had not gone to the police after the shooting because Brown had threatened her and because of her drug usage. Despite these factors, the jury apparently believed much of Goens' testimony, as was its prerogative.
 {¶ 34} Likewise, Tindull admitted to crack and heroin use the week that he stayed at the Dayton Motor Motel in May 2005. Specifically, he stated that he had used drugs about eleven hours before the attack, which happened in the early morning hours. He indicated that he had had a drug problem since his time in Vietnam and that he had moved to Dayton for treatment of this problem at the VA hospital. Tindull was cross-examined about his drug usage. He was also questioned about his inability to identify Brown in a photo spread the week after the shooting, notwithstanding that he was "100 percent" sure in court that Brown was the perpetrator of the offense. The jury made its credibility determination in light of this evidence, and we will not second-guess its assessment.
 {¶ 35} The fourth assignment of error is overruled.
 {¶ 36} V. "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 37} Brown claims that his trial counsel was ineffective because he failed to subpoena several witnesses who might have been helpful at trial.
 {¶ 38} We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *Page 11 State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance.Strickland, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. State v. Cook (1992),65 Ohio St.3d 516, 524-525, 605 N.E.2d 70.
 {¶ 39} Brown asserts that counsel was unprepared to call three witnesses who could have been helpful to his defense. The first was Malissa McLain, who testified that Brown had admitted that he had "had to pop a cap in somebody's ass" at the Dayton Motor Motel the morning of the shooting. Although McLain's name had appeared on the state's witness list and she was called by the state, defense counsel had not talked to this witness before trial because her observations on the night in question seemed "fairly insignificant" based on the police reports. According to the reports, she had apparently acknowledged seeing someone in boxer shorts sitting in front of the Dayton Motor Motel earlier in the evening. The prosecutor claimed to have learned of McLain's conversation with Brown the day of the shooting only the day before her testimony. Counsel argued unsuccessfully that he should have heard about this new evidence from the prosecutor before the witness testified, even if the state *Page 12 
had only discovered it a day earlier.
 {¶ 40} We cannot say that counsel's conduct in failing to question or subpoena McLain before trial fell below an objective level of reasonableness. McLain had appeared on the state's witness list, but the record of her statement in the police reports was apparently limited to having seen someone in boxer shorts sitting in front of the motel. Based on this information, counsel could have reasonably concluded that McLain's testimony was insignificant. Moreover, he strenuously objected to the use of this testimony at trial, claiming that both he and the prosecutor had been "ambushed" by her additional revelations. Counsel's conduct was not unreasonable under the circumstances.
 {¶ 41} Brown also objects to his counsel's failure to subpoena Officer Sawmiller and Cheri Tuinstra. Sawmiller allegedly could have testified that he stopped someone in the vicinity of the motel on the night in question who resembled the description of the suspect. The police did not consider this man a suspect, but their reasons for that determination are undeveloped in the record. Neither the state nor the defense subpoenaed Sawmiller, so he was unavailable when the defense expressed its desire to call him.
 {¶ 42} Although Sawmiller's testimony may have raised some questions about the police investigation, we will not speculate as to whether his testimony would have helped Brown. Brown has not demonstrated based on this record that the outcome of the trial would have been different but for counsel's failure to subpoena this witness.
 {¶ 43} Regarding Cheri Tuinstra, it appears from the transcript that Brown wanted this witness called, but that defense counsel did not think her testimony would *Page 13 
be beneficial to the defense. Tuinstra apparently could have offered testimony contradicting McLain's testimony about Brown's whereabouts at the time of his alleged encounter with McLain. In other respects, however, her testimony would have been detrimental to the defense, and counsel ultimately withdrew his request to call her. Counsel's actions with respect to this witness appear to have been reasonable.
 {¶ 44} The fifth assignment of error is overruled.
 {¶ 45} VI. "AN ORDER OF CONSECUTIVE SENTENCES AND MAXIMUM SENTENCES ARE [SIC] UNCONSTITUTIONAL AND MUST BE VACATED."
 {¶ 46} Under this assignment of error, Brown attempts to construe the trial court's statement at sentencing that it had relied on "pertinent statutes in Ohio that relate to sentencing" as a violation of State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Foster recently held parts of Ohio sentencing scheme unconstitutional, including certain provisions related to maximum and consecutive sentences.
 {¶ 47} There is no evidence in the record that the trial court made findings under any of the unconstitutional portions of the sentencing statute. In fact, the court expressed its awareness of "the recent Supreme Court case" relating to sentencing before imposing Brown's sentence. As such, the record does not indicate that Brown's sentence was based on improper fact-finding under the unconstitutional portions of the sentencing statute.
 {¶ 48} The sixth assignment of error is overruled.
 {¶ 49} The judgment of the trial court will be affirmed. *Page 14 
FAIN, J. and WALTERS, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Kirsten A. Brandt
Charles W. Slicer, III
 Hon. John W. Kessler *Page 1