The STATE of Ohio, Appellee,

v.

DEAN, Appellant.

[Cite as *State v. Dean*, 187 Ohio App.3d 495, 2010-Ohio-1684.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2009 CA 37.

Decided April 16, 2010.

Stephen A. Schumaker, Clark County Prosecuting Attorney, and Amy M. Smith, Assistant Prosecuting Attorney, for appellee.

Timothy Young, State Public Defender, and Jennifer A. Prillo and Kathryn L. Sandford, Assistant Public Defenders, for appellant.

DONOVAN, Presiding Judge.

{¶ 1} Defendant-appellant, Jason B. Dean, through counsel, appeals from a judgment of the Clark County Court of Common Pleas, which sustained Dean's pro se motion to terminate his postconviction proceedings. The postconviction proceedings stem from Dean's conviction and death sentence in 2006 for the murder of Titus Arnold. Counsel for Dean filed a timely notice of appeal with this court on April 1, 2009.

I

{¶ 2} On May 2, 2005, Dean was indicted for six counts of attempted murder, two counts of aggravated murder, four counts of having weapons while under disability, two counts of aggravated robbery, and two counts of discharging a firearm into a habitation. After a jury trial, Dean was found guilty on all counts in the indictment, and the jury recommended that he be sentenced to death. The trial court accepted the recommendation of the jury and sentenced Dean to death on June 2, 2006. *State v. Dean* (June 2, 2006), Clark C.P. No. 05CR0348. Dean subsequently filed a notice of appeal with the Ohio Supreme Court on June 12, 2006, and the appeal is currently pending.

{¶ 3} On March 23, 2007, Dean filed a petition for postconviction relief in the trial court. Additionally, Dean filed motions for discovery, recusal of the trial court judge, appropriation of funds for substance-abuse testing, and appropriation of funds for neuropsychological testing. The state filed a response to Dean's petition on January 28, 2008. On February 28, 2008, the trial court overruled Dean's motion for recusal. Dean filed a memorandum contra to the state's response to his petition for postconviction relief on March 7, 2008.

{¶ 4} On January 21, 2009, Dean sent the trial judge a letter requesting that his postconviction proceedings be terminated. The trial judge construed Dean's letter to be a pro se motion to terminate his postconviction proceedings, and the letter was filed on January 26, 2009. On February 18, 2009, the state filed a request for a hearing on Dean's motion to terminate his postconviction proceedings, and the court issued an order scheduling the hearing for February 26, 2009. On February 24, 2009, counsel for Dean filed a motion to continue the hearing pending the outcome of Dean's direct appeal in the Ohio Supreme Court. The trial court did not rule on Dean's motion for a continuance.

{¶ 5} At the hearing on February 26, 2009, Dean's counsel argued that the trial court should withhold any decision on Dean's pro se motion to terminate his postconviction proceedings until the Ohio Supreme Court has issued its decision regarding Dean's direct appeal of his conviction and sentence. In the alternative, Dean's counsel requested that the trial court allow Dean to be evaluated in order to establish whether he was competent to waive his postconviction proceedings. In support of the request, Dean's counsel proffered evidence that called Dean's mental capacity to waive into question. The state argued that the record was insufficient to establish that Dean was mentally incompetent and thus unable to waive his postconviction proceedings. The state suggested that the court personally address Dean in order to determine whether any waiver would be knowingly, intelligently, and voluntarily made. After a short colloquy with Dean, the court granted his pro se motion to terminate his postconviction proceedings. It is from this judgment that Dean now appeals.

## II

{¶ 6} Dean's first assignment of error is as follows:

{¶ 7} "The trial court erred when it granted Dean's pro se motion to terminate post-conviction proceedings without first ordering an evaluation and holding a hearing to determine Dean's competence."

{¶ 8} In his first assignment of error, Dean, through counsel, contends that the trial court abused its discretion when it allowed him to waive his right to postconviction review of his capital case without first ordering that he submit to a competency evaluation. Specifically, Dean's counsel argues that dismissal of his petition for postconviction review based on a pro se motion was inappropriate because sufficient indicators were present that cast doubts upon Dean's competence.

{¶ 9} " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 10} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

{¶ 11} Initially, we note that a postconviction proceeding is not an appeal of a criminal conviction, but a collateral civil attack on a criminal judgment. *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67. "Indeed, post-conviction state collateral review itself is not a constitutional right, even in capital cases." Id., citing *Murray v. Giarratano* (1989), 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1. Postconviction review is a narrow remedy, because res judicata bars any claim that was or could have been raised at trial or on direct appeal. Id. Accordingly, in a postconviction proceeding, a convicted defendant has only the rights granted him by the legislature. *State v. Moore* (1994), 99 Ohio App.3d 748, 751, 651 N.E.2d 1319.

{¶ 12} However, the issue here is whether the trial court should have ordered Dean to submit to a mental evaluation in order to determine whether he was competent to waive his right to postconviction review of his conviction and sentence. In *State v. Berry* (1997), 80 Ohio St.3d 371, 686 N.E.2d 1097, the defendant desired to submit to execution and therefore to terminate further

challenges to his conviction and sentence. The Ohio Public Defender, who had been representing Berry, claimed that he was not mentally competent to make such a decision. Id. The state contended that Berry was competent. After repeated representations by Berry to the Ohio Supreme Court and others that he desired to discontinue his litigation, the state filed a motion in the Ohio Supreme Court for a competency hearing. Id. The Ohio Supreme Court ordered an evaluation of Berry's competence and appointed a psychiatrist to conduct the evaluation. Id. The Ohio Supreme Court set forth the following standard regarding the procedure by which Berry's competence was to be evaluated:

{¶ 13} "A capital defendant is mentally competent to abandon any and all challenges to his death sentence * * * if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue further remedies. The defendant must fully comprehend the ramifications of his decision, and must possess the 'ability to reason logically,' i.e., to choose 'means which relate logically to his ends.'" (Citations omitted.) Id.

{¶ 14} In *Berry,* the Ohio Supreme Court relied on language in the United States Supreme Court case of *Rees v. Peyton* (1966), 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583. In *Rees,* the defendant had filed a petition for certiorari in the United States Supreme Court in which he sought review of a federal court judgment denying habeas corpus relief. A short time later, the defendant directed his counsel to withdraw the petition and forgo any further review of his conviction and sentence. Id. Counsel for the defendant had him evaluated by a psychiatrist, who determined that he was incompetent. Id. The United States Supreme Court directed the federal district court to determine the defendant's mental competence, framing the question as follows:

{¶ 15} "[W]hether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation[,] or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." Id.

{¶ 16} In a postconviction review of a capital case, the defendant's life is at stake. Pursuant to the Ohio Supreme Court's mandate in *Berry,* a capital defendant is entitled to a competency hearing when he is seeking to terminate all further challenges to his death sentence. Id. If and when the trial court determines that a defendant is competent after an evaluation has been performed, then he is free to "decide what is in his own best interest" and waive his right to any further review of his conviction and sentence. *State v. Berry* (1997), 80 Ohio St.3d at 385, 686 N.E.2d 1097, quoting *State v. Tyler* (1990), 50 Ohio St.3d 24, 29, 553 N.E.2d 576.

{¶ 17} In the following exchange with the trial court, defense counsel provided a basis for granting Dean a competency hearing before allowing him to waive his right to postconviction proceedings:

{¶ 18} "The Court: * * * And I've received a motion to continue the hearing on this—on the defendant's pro se motion and I've also received a proffer of Dr. Stinson's letter in support of that motion. Did defense counsel want to address the Court on that motion to continue the hearing?

{¶ 19} "Defense Counsel: Yes, Your Honor. Thank you. We think it would be appropriate since Mr. Dean would be waiving his right to post-conviction review under the statute and waiving his opportunity to challenge constitutional violations that obviously from his statements he feels occurred in his trial.

{¶ 20} "We think it would be appropriate to have Mr. Dean evaluated for his competence and mental capacity to effectuate a waiver, including addressing any neurological deficits that have been noted in the record through Dr. Stinson and through some of the records.

{¶ 21} "We've obviously, as the Court has noted, offered Dr. Stinson's letter in support of this request for a competency evaluation. We just note for the record, Your Honor, that in addition to Dr. Stinson's letter he's referring back to his post-conviction in his review of the record filed thus far in the post-conviction case.

{¶ 22} "There are prior diagnoses for Mr. Dean of bipolar disorder, dysthymic disorder. At age fourteen, he was diagnosed by Dr. Gibeau with an atypical organic brain syndrome. Dr. Stinson notes there's strong evidence of neurological deficits present. These include deficits in impulse control, planning future behavior, and lack of emotional stability, *which would all impact upon knowing intelligent waiver with a capacity to waive.*

{¶ 23} "Additionally, Dr. Stinson noted in his affidavit that Mr. Dean had previously tested as a youth in the average range of intelligence, and in 2006, Dr. Stinson noted that he was given the wide-range achievement test, version three of an IQ test, and he was in borderline range.

{¶ 24} "There is also a history of Mr. Dean having used—having been administered antipsychotic and antidepression drugs.

{¶ 25} "Dr. Stinson notes he's been on the mental health care caseload while incarcerated, and we also note for the record that Dr. Stinson diagnosed multiple substance abuse of alcohol dependence, cannabis dependence, cocaine dependence, and the evidence that the post—developed in the post-conviction petition establishes that Mr. Dean was using those drugs as early as age ten or twelve. So we feel that there is a substantial body of evidence that warrants at least the

concern especially in death penalty case that Mr. Dean's competence be evaluated."

{¶ 26} In response to defense counsel's request for a competency evaluation, the state advanced the following argument:

{¶ 27} "The Court: Thank you. Did the State have any response to that?

{¶ 28} "The State: Your Honor, the State believes that the appropriate procedure is for the Court to engage in a dialogue with this defendant as the Court already has done to a limited extent so that in order to determine initially whether he does understand the nature of these proceedings here and does understand exactly what he's doing in making his waiver and whether he has, in fact, worked with his attorneys on this issue.

{¶ 29} " * * *

{¶ 30} "I would note that the letter contained from Dr. Stinson references an evaluation—at least a partial evaluation that was done in February and March 2007. At least according to the letter that there was bipolar, there is no diagnosis that's mentioned here that even an Axis One, DSM–IV–TR, a diagnosis that in any way interferes with competency.

{¶ 31} "I would also note for the record, Your Honor, that Mr. Dean is presently incarcerated at the Youngstown super max death row. There's two death rows in Ohio.

{¶ 32} "One is at Mansfield for those that are on the mental health caseload and that need assessment of the department of rehabilitation of corrections mental health assistance and so forth, and then Youngstown is for those, at least at this point, who do not. I find it curious that despite all of these concerns, that at least as far as from those who observe him on a day-to-day basis that it has not been determined that he should be at Mansfield even.

{¶ 33} "At this point in time, Your Honor, of course, it is within the Court's discretion to order a competency evaluation to be done by mental health professionals, if the Court so desires; however, I believe the appropriate procedure for the Court would be to address the defendant as to these mental health issues and to determine whether after addressing those issues with the defendant, whether the Court believes that such an evaluation is wanted or necessary.

{¶ 34} "So I would urge the Court to have further dialogue just to determine whether this defendant realizes the rights that he is waiving is similar to perhaps a [Crim.] Rule 11 type of inquiry.

{¶ 35} "And whether he understands the implications of waiving post-conviction rights on a post-conviction petition because once he does, those rights cannot be

reinstituted. And then the Court, I believe, should exercise discretion as to whether there is any further proceedings that are necessary in this matter."

{¶ 36} Dean's counsel requested that the trial court stay any decision regarding Dean's pro se motion to terminate his postconviction proceedings until his competency could be evaluated. In support of the request for a competency hearing, defense counsel proffered a letter from Bob Stinson, Psy.D., who recommended that Dean be evaluated prior to being permitted to waive his rights. We also note that Dean's counsel recited a veritable laundry list of mental conditions and prior diagnoses during the hearing on February 26, 2009 that Dean allegedly suffered. Interestingly, the evidence submitted by defense counsel established that Dean's IQ had dropped significantly since his trial in 2006. After a thorough review of the record, we find that defense counsel presented sufficient evidence that would require the trial court to order a competency evaluation prior to allowing Dean to waive his right to postconviction proceedings.

{¶ 37} In the instant case, the trial court ignored the letter from Dr. Stinson as well as the attendant arguments of defense counsel, which clearly demonstrated the need for Dean to be evaluated prior to granting his motion to waive his right to postconviction relief. Instead, the trial court decided to move forward without the benefit of a competency determination and entered into a dialogue with Dean, as suggested by the state, in an effort to establish that he was knowingly and voluntarily relinquishing his rights. In the following excerpt, the trial court inquired into Dean's reasons for wanting to waive his rights: "The Court: Now, because I'm presiding over this case I am going to engage in a little bit more of a significant dialogue with Mr. Dean to try to determine whether or not that he's filed, that he understands his rights and that he's voluntarily waiving those rights.

{¶ 38} "Mr. Dean, I'll begin by asking you. You have already told me that this is, in fact, what you want to do. You have given me a reason why. Has anyone threatened you to get you to waive your right to pursue these post-conviction proceedings?

{¶ 39} "Mr. Dean: Your actions and the way you've handled my case has inadvertently threatened me, just like you threatened my attorneys at my original trial. That you would deal with them after the trial was over, which you attempted to do and failed to do. That motion was filed and denied. And just the way you handled my trial.

{¶ 40} " * * *

{¶ 41} "You have been vindictive.

{¶ 42} "The Court: You're saying that I've threatened you to give up your rights to post-conviction proceedings?

{¶ 43} "Mr. Dean: I feel threatened by anything you have to do with my case because of the way you handled my case to begin with."

{¶ 44} Dean's responses to the trial court's questions reveal that his sole rationale for withdrawing his postconviction relief petition was his belief that the trial court was biased and unfair. Dean never suggested that his petitions were without merit and/or failed to raise valid legal arguments. A sentiment by Dean that the court is prejudiced against him should not result in a willingness by the trial court to so readily accept a waiver against the advice by counsel where genuine issues exist as to Dean's mental capacity to understand the difference between life and death.

{¶ 45} Our conclusion finds further support in R.C. 2953.21, the section of the Revised Code that confers a right to postconviction relief. Paragraph (I)(1) of that section provides that the court must appoint counsel to represent an indigent defendant who is sentenced to death when the defendant intends to file a petition for postconviction relief and "the person either accepts the appointment of counsel or is unable to make a competent decision whether to accept or reject the appointment of counsel." The court appointed the State Public Defender to represent defendant Dean in the matter of his petition for postconviction relief. The court could not thereafter proceed to rule on the merits of Dean's pro se application to withdraw the petition that his counsel had filed without first determining that Dean is competent to proceed unrepresented by the counsel that the court had appointed pursuant to R.C. 2953.21(I)(1). The same competency hearing that Dean's counsel requested regarding the merits of his motion to withdraw his petition would allow the court to determine whether he was able to seek that relief unrepresented.

{¶ 46} Dean's first assignment of error is sustained.

### III

{¶ 47} Dean's second assignment of error is as follows:

{¶ 48} "The trial court abused its discretion when it held a hearing on Dean's pro se motion to terminate his post-conviction proceedings without first considering the arguments of the Ohio Public Defender to continue that hearing pending a decision on Dean's direct appeal."

{¶ 49} In light of our ruling with respect to Dean's first assignment of error, his second assignment is rendered moot.

## IV

{¶ 50} Dean's first assignment of error having been sustained, the judgment of the trial court is reversed, and this matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FAIN and GRADY, JJ., concur.