[Cite as *State v. Morris*, 2018-Ohio-4527.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27875 |
| | : | |
| v. | : | Trial Court Case No. 2009-CR-2159/1 |
| | : | |
| D'ALCAPONE A. MORRIS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of November, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ANTHONY R. CICERO, Atty. Reg. No. 0065408, 500 East Fifth Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** This matter is before the court on the appeal of Defendant-Appellant, D'Alcapone Morris, from a trial court judgment overruling and dismissing his post-conviction petition for relief. According to Morris, the trial court abused its discretion by dismissing his successive post-conviction petition because the record shows that Morris was unavoidably prevented from discovering the facts upon which he relied and that, but for the constitutional error in his trial, no reasonable fact-finder would have found him guilty.

**{¶ 2}** Morris further contends that that court abused its discretion by failing to hold an evidentiary hearing on his successive petition before dismissing it. His argument is based on a claim that evidence outside the record sets forth sufficient operative facts demonstrating substantial grounds for relief. Finally, Morris maintains that his conviction is voidable because trial counsel provided ineffective assistance of counsel.

**{¶ 3}** We conclude that the trial court lacked jurisdiction to consider Morris's successive petition for post-conviction relief, based on Morris's failure to meet the threshold requirements to excuse his untimely petition under R.C. 2953.23(A)(1). Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 4}** This is the fourth appeal we have considered in connection with Morris's case. In 2012, we affirmed Morris's conviction and sentence of 35 years to life on charges of murder, aggravated burglary, aggravated robbery, and a firearm specification. *State v. Morris*, 2d Dist. Montgomery No. 24034, 2012-Ohio-22 (*Morris I*). Morris did not

appeal from that judgment to the Supreme Court of Ohio.

{¶ 5} In September 2015, Morris filed a motion for leave to file a delayed motion for new trial; the trial court overruled this motion in November 2015. Shortly after the trial court's decision, Morris filed a motion asking the trial court to provide him with the transcripts of his trial. This motion was also denied. After Morris appealed from both judgments, we consolidated the appeals.

{¶ 6} After the case had been briefed, Morris asked us to remand the case to the trial court to correct the record to include an affidavit that he purportedly submitted to the trial court. We denied this request in September 2016, because Morris admitted he had not submitted the affidavit in question to the trial court. We noted that the Ohio Appellate Rules did not allow us to add matters to the record that the trial court had not considered. *See State v. Morris*, 2d Dist. Montgomery No. 26949, 2016-Ohio-7417, ¶ 6 (*Morris II*).

{¶ 7} We then filed an opinion on March 31, 2017, affirming the trial court's judgments on the motion for leave and the motion for transcripts. *State v. Morris*, 2d Dist. Montgomery No. 26949, 2017-Ohio-1196 (*Morris III*).

{¶ 8} The factual background of Morris's case, according to *Morris I*, is as follows:

The record reflects that a jury found Morris guilty following an April 2010 trial. The State's evidence at trial established that on June 3, 2009, Morris and a companion, Michael Guy, arranged to have a female, Nichelle White, drive them to purchase marijuana from an individual named Richard Pogue. Upon arriving at Pogue's residence, they discovered that he did not have the marijuana. Pogue agreed, however, to accompany them to the home of Javon Buckman, who had marijuana available. White drove

the three men to Buckman's house on Kingsley Avenue. Once there, Buckman would allow only two of them to enter. As a result, Pogue and Guy went inside while Morris stayed outside.

Inside the house, Buckman handed Guy some marijuana. Instead of paying, Guy pulled out a revolver he earlier had obtained from Morris and ordered Buckman and Pogue to the floor. As that was happening, Morris entered through the side door, punched Buckman and Pogue in their faces, took the revolver from Guy, and declared that Buckman and Pogue were about to die. With Guy standing in front of him and Morris standing behind him, Buckman heard Morris cock the revolver and fire a single shot. Guy and Morris then rifled through Buckman's pockets before fleeing the scene in White's waiting car. Pogue died as a result of a point-blank gunshot wound to his back. During their investigation, police identified Guy and Morris as suspects. They first located Guy, who led them to White. They later found Morris hiding under insulation in the attic of his girlfriend's house.

Morris testified at trial and admitted being at Buckman's house with Guy and Pogue on the night in question. He admitted bringing a revolver with him but denied knowing about a robbery. According to Morris, he entered the house after hearing or seeing commotion inside and saw Guy brandishing the gun. He testified that he was attempting to get the gun from Guy when it "went off." The jury nevertheless convicted Morris of all charges against him. The trial court imposed an aggregate sentence of thirty-five years to life in prison.

(Footnote omitted.)   *Morris I*, 2d Dist. Montgomery No. 24034, 2012-Ohio-22, at ¶ 2-4.

{¶ 9} On March 24, 2016 (while the appeal in *Morris III* was pending), Morris filed a petition for post-conviction relief in the trial court.   In this petition, Morris alleged that in February 2016, a State witness, Javon Buckman, began writing to him through the inmate J-Pay system while Buckman was incarcerated at Ross Correctional Institution. According to Morris, Buckman eventually admitted that he had lied at trial and that he had changed his story to avoid being charged with possession of drugs.   Morris contended that the victim, Richard Pogue, had not been shot in the back as Buckman testified, but was shot in the chest during a struggle for the gun.   Morris alleged that this was newly discovered evidence, and that the State knew that Buckman had lied.   In a second claim, Morris alleged that the State had withheld evidence from the defense because the defense was never made aware of the fact that Buckman had entered into a plea deal with the State.

{¶ 10}   The State did not respond to the petition, and on April 27, 2017, the trial court dismissed the petition and overruled other requests Morris had filed, like a motion for appointment of counsel and appointment of an expert.   *See* Doc. # 10.   Among other things, the trial court concluded that the petition was untimely and that Morris failed to offer any evidence or information concerning the fact that he had been unavoidably prevented from timely filing the petition.   *Id*. at p. 8.   Morris did not appeal from the trial court's judgment.

{¶ 11} In June 2017, Morris filed a motion for production of the autopsy report and trial exhibits.   The trial court denied this motion on September 6, 2017, and Morris did not appeal.   Subsequently, on September 19, 2017, Morris filed a second petition for

post-conviction relief.   The denial of this petition is the subject of the current appeal.

{¶ 12} The petition was supported by the affidavit of Michael Guy, dated July 8, 2017; the affidavit of Patrick Davis, dated September 14, 2015; and Morris's own affidavit, dated August 25, 2017.   The grounds asserted in the petition were the same as the alleged errors that Morris cites on appeal.   The State filed a motion to dismiss the petition.   After considering the matter, the trial court filed a judgment in January 2018, concluding that the petition was untimely, and that Morris failed to offer information or evidence that he was unavoidably prevented from discovering the facts on which the petition was based.   The court further found that the issues in the petition were barred by res judicata.   Finally, after considering the merits, the trial court found that the petition had no merit.   Morris timely appealed from the trial court's dismissal of his petition.

II.   Alleged Error in Dismissing the Petition for Untimeliness

{¶ 13} Morris's First Assignment of Error states that:

The Trial Court Abused Its Discretion When It Dismissed Morris['s] Successive Post-Conviction Petition When the Record Showed That (1) Morris Was Unavoidably Prevented From Discovery of the Facts Upon Which He Relies, and (2) But for the Constitutional Error in His Trial, No Reasonable Factfinder Would Have Found Morris Guilty.

{¶ 14} Under this assignment of error, Morris concedes that his petition was untimely, but argues that he was unavoidably prevented from discovering the facts presented in Guy's affidavit.   Morris contends that he attempted to reach out to Guy after trial, and that Guy only recently contacted him to express willingness to provide an

affidavit. According to Morris, he also established constitutional error because Guy's affidavit indicated that Morris did not come to the house to rob Buckman, and that the shooting was accidentally done during a brief struggle in which the victim, Pogue, lunged at Morris.

{¶ 15} Under R.C. 2953.21(A)(2), petitions for post-conviction relief, except as otherwise provided by R.C. 2953.23, must "be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication * * *."[1] The exception pertinent to this case, as found in R.C. 2953.23, states that:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless * * * :

(1) Both of the following apply:

(a) * * * [T]he petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief * * *.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found

---

[1] When Morris was convicted, the time limit was 180 days. *See State v. DeVaughns*, 2017-Ohio-475, 84 N.E.3d 332, ¶ 25, fn.2 (2d Dist.). For purposes of the present appeal, this is irrelevant, as Morris's petition was filed many years after August 26, 2010, when the transcript was filed in his direct appeal.

the petitioner guilty of the offense of which the petitioner was convicted * * *.

{¶ 16} Unless untimely filing is excused under R.C. 2953.23, a trial court lacks jurisdiction to consider untimely or successive petitions for post-conviction relief. *DeVaughns* at ¶ 25. As has been often stressed, post-conviction petitions are civil collateral attacks on the criminal judgment, and the remedy is narrowly prescribed. *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994); *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 48. As a result, "in a postconviction proceeding, a convicted defendant has only the rights granted him by the legislature." *State v. Dean*, 187 Ohio App.3d 495, 2010-Ohio-1684, 932 N.E.2d 918, ¶ 11 (2d Dist.).

{¶ 17} We review the trial court's ruling for abuse of discretion, which "most often involves an 'unreasonable' decision that is not supported by a sound reasoning process." *State v. Mackey*, 2018-Ohio-516, 106 N.E.3d 241, ¶ 8 (2d Dist.), citing *Gondor* at ¶ 58.

{¶ 18} " 'The phrase "unavoidably prevented" means that a defendant was unaware of [the] facts and was unable to learn of them through reasonable diligence.' " *State v. Buennagel*, 2d Dist. Greene No. 2010 CA 74, 2011-Ohio-3413, ¶ 25, quoting *State v. McDonald*, 6th Dist. Erie No. E-04-009, 2005-Ohio-798, ¶ 19.

{¶ 19} With respect to Michael Guy, Morris was well aware of his existence and location at all relevant times before trial. Morris was arrested on the indictment in August 2009 and remained in the Montgomery County Jail until trial, due to the very high bail amount that had been set. On November 19, 2009, the State filed a subpoena for the original scheduled trial date, and asked that it be served on Guy at the Montgomery County Jail. After the original trial date was continued, the State subpoenaed Guy for trial the week of February 8, 2010, again at an address at the Montgomery County Jail.

Guy was also on witness lists filed by the State on January 29, 2010, and by Morris on February 1, 2010, with Guy's address still being at the Montgomery County Jail.

{¶ 20} After a time waiver was filed, trial was rescheduled for April 19, 2010, and the State again subpoenaed Guy at the jail address. The State's amended list of witnesses, filed on April 10, 2010, listed Guy as a State witness, with a listed address at the Montgomery County Jail. Given these facts, Morris was well aware of Guy's location and could have subpoenaed him to testify at trial. *Compare State v. Moody*, 2d Dist. Montgomery No. 27737, 2018-Ohio-2561, ¶ 5 (finding untimeliness in filing post-conviction petition unexcused, because defendant would have been aware of alibi witnesses at time of trial). Thus, there was no unavoidable delay concerning Guy.

{¶ 21} In his successive petition, Morris did not discuss the issue of unavoidable delay with respect to Patrick Davis, although he did state in passing that Davis's account was "new" evidence. According to the affidavit that was filed, Davis went to Javon Buckman's house the night of the murder to buy "weed" from Buckman. After Davis got out of his car, he heard a gunshot and saw two men running out of the side door of the house. He then heard another gunshot and saw an individual stumbling out of the front door. Davis claimed that he did not then know someone had been killed, but had recently heard two inmates talking about the case. Davis said that he told these inmates about what he had seen and of his willingness to sign an affidavit and testify.

{¶ 22} The intent of submitting this affidavit was to imply that another unidentified individual fired a shot after Morris left Buckman's house and that this shot, rather than Morris's shot, killed Pogue. However, the record in the trial court is clear that Morris possessed this information shortly after he filed his motion for leave to file a delayed

motion for new trial. Specifically, that motion was filed on September 10, 2015, and the Davis affidavit is dated September 14, 2015.

{¶ 23} As was noted, our decision in *Morris II* affirmed the trial court's denial of Morris's request for leave to file a delayed motion for new trial. *See Morris II*, 2d Dist. Montgomery No. 26949, 2017-Ohio-1196, at ¶ 9-20 and 36. When we discussed what had occurred in the trial court, we noted Morris's claim that "Joshua Davis, another inmate at Ross Correctional Institution, had overheard him discussing his case in August 2015. Davis (who was previously unknown to Morris) indicated that on the night of the murder, he was going to Buckman's house to buy marijuana. While Davis was walking toward the house, he heard a gunshot and saw two African-American males running out of the door. As Davis was leaving, he heard another shot and saw another African-American male stumbling out the other door of the house, at which point Davis stated that 'he got his ass out of there.' " *Id*. at ¶ 5.

{¶ 24} Despite the discrepancy in the first names, "Joshua" and "Patrick" are clearly the same person, and Morris had obtained a signed affidavit from Davis within a few days after he asked in 2015 to file a delayed motion for a new trial. However, Morris did not file this affidavit with the trial court at that time. He also did not file the affidavit as part of his first petition for post-conviction relief, which was filed on March 24, 2016. Instead, he waited until September 19, 2017, to file the affidavit as part of his second petition for post-conviction relief. This was more than two years after Morris obtained the affidavit, and the delay was clearly avoidable.

{¶ 25} Accordingly, we agree with the trial court that Morris failed to establish the first prong under R.C. 2953.23(A)(1). As a result, the trial court lacked jurisdiction to

consider Morris's successive petition. *DeVaughns*, 2017-Ohio-475, 84 N.E.3d 332, at ¶ 25. In view of the failure to satisfy one of the two required elements in R.C. 2953.23(A)(1), we need not address whether Morris showed "clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found" him guilty of the offenses of which he was convicted. R.C. 2953.23(A)(1)(b).

{¶ 26} Based on the preceding discussion, the First Assignment of Error is overruled.

### III. Failure to Hold an Evidentiary Hearing

{¶ 27} Morris's Second Assignment of Error states that:

The Trial Court Abused Its Discretion When It Failed to Hold an Evidentiary Hearing on Morris['s] Successive Post-Conviction Petition When the Full Balance of the Evidence Dehors the Record Set Forth Sufficient Operative Facts That Demonstrate Substantial Grounds for Relief.

{¶ 28} Under this assignment of error, Morris contends that he demonstrated substantial grounds for relief because he submitted three affidavits containing evidence outside the record. We have already discussed two of the affidavits. The third is the affidavit of Morris, who says that he was not "totally forthcoming" at trial. His reason for this is that he knew the autopsy report had been amended and was afraid the jury would not believe him, since Guy was not present to tell the truth as to what had happened.

{¶ 29} We need not address this assignment of error. Morris's "failure to meet the threshold requirement" imposed by R.C. 2953.23(A) renders the assignment of error

moot.   *State v. Beavers*, 2d Dist. Montgomery No. 20572, 2005-Ohio-1205, ¶ 24.   The assignment of error, therefore, is overruled as moot.


## IV.   Ineffective Assistance of Trial Counsel

**{¶ 30}** Morris's Third Assignment of Error states as follows:

Morris['s] Conviction and Sentence Is Voidable Because Morris Was Denied the Effective Assistance of Counsel in Violation of His Rights Under the Sixth Amendment of the United States Constitution.

**{¶ 31}** Under this assignment of error, Morris contends that his trial counsel rendered ineffective assistance because he failed to properly investigate the case. According to Morris, if trial counsel had investigated, he would have discovered that Guy was willing to testify at trial, and would have also learned that Morris was not involved in a plan to rob Buckman.   In addition, Morris contends that proper investigation would have revealed that Pogue was shot in the chest and not in the back as indicated by the autopsy report, and that a second shooter (as revealed by the Davis affidavit) may have existed.

**{¶ 32}** Again, due to Morris's failure to meet the necessary requirements in R.C. 2953.23(A), this assignment of error is overruled as moot.   *See State v. Yates*, 2d Dist. Montgomery No. 25308, 2013-Ohio-3388, ¶ 21 (overruling claim of ineffective assistance of trial counsel as moot, due to defendant's untimely filing of petition for post-conviction relief).


## V.   Conclusion

**{¶ 33}** Morris's First Assignment of Error having been overruled, and the remaining

assignments of error having been overruled as moot, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, J., concurs.

HALL, J., concurring:

{¶ 34} I wholeheartedly agree that Morris failed to demonstrate that he was "unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief." R.C. 2953.23(A)(1)(a). Therefore, Morris's successive post-conviction petition, which was filed more than seven years after the filing of the trial transcript in his direct appeal, was not timely and without excuse for the late filing. For that reason alone, the trial court did not have jurisdiction to consider the petition and we affirm its decision. I write separately to elaborate on the fact that Morris has also failed to show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty." R.C. 2953.23(A)(1)(b). This failure also separately prevented the trial court from considering the late petition.

{¶ 35} There should be no doubt that, even if the purported new evidence included in the affidavit of Michael Guy were considered, and assuming Guy would testify consistent with the affidavit's terms, Morris would have been found guilty. I start with the undisputed evidence that Pogue was shot in the "upper back sort of just left of midline." T. 538. At the trial, then deputy coroner Kent Harshbarger testified about Pogue's wounds. Photographs of Pogue's shirt from the scene and of his body at the autopsy were displayed. Harshbarger described the wound in the back, the pattern of the wound, and the thermal effect on the skin, referencing Exhibit 9 and others. He described why it was

a "gunshot wound of entrance" T. 539. Harshbarger was shown a photograph from the scene depicting the back of Pogue's shirt showing "soot, and gunpowder, and its all been deposited right around that defect in the shirt." T. 542. Harshbarger testified this meant the gunshot wound to the back was a "contact wound" T. 539. Also displayed were State's Exhibits 12 and 13, photos of the front of Pogue's body, where Harshbarger pointed out "[t]his is a gunshot wound of exit on the anterior left chest or front of the left chest." T. 544. He also explained why he concluded this was an exit wound. Morris makes much of an apparent dictation or transcription error that was made in the original coroner's report indicating that the direction of travel of the bullet through the body was "front to back" T. 550. The detailed trial testimony, confirmed by specific photographic evidence, was that "[c]learly, the entrance wound is in the back and comes out the front. It's a back to front pathway. My report originally read the front to back, which clearly is an error." T. 551.[2] In my view, the evidence that Pogue was shot in the back at point blank range was undisputed. No reasonable juror could have concluded that Pogue was shot in some other way.

{¶ 36} To provide more context, Javon Buckman, the surviving victim of the robbery, testified that after Pogue and Michael Guy initially entered the house, Guy pulled out a gun and told Buckman and Pogue to get down. As they were doing so, Morris barged in, took the weapon from Guy, and threatened Buckman and Pogue that they were about to die. Both victims apparently attempted to get up but again laid back down. Morris was holding the gun when it went off. Buckman and Pogue were on the floor when Morris fired

---

[2] The original report was signed June 25, 2009. T. 550. The amended report was signed November 11, 2009. *Id.* The jury trial commenced on April, 19, 2010.

the weapon. T. 398-404.

{¶ 37} That leads to the pertinent part of Guy's affidavit, which is as follows:

7. While I had them both on the ground [decedent Richard Pogue and victim Javon Buckman], D'Alcapone [Morris] came in and asked what was going on because he had no idea that I was going to rob Mr. Buckman.

8. He [Morris] then asked me to hand him the gun to try to defuse the situation and in the process told me to "chill out".

9. While this exchange was going on, Richard Pogue lunged at [Morris] while he [Morris] had the gun in his hand and a struggle ensued after which I heard a gunshot.

Affidavit of Michael Guy. Morris's contention is that if Guy's affidavit's version of events were presented to a jury, the jury could reasonably believe that Morris accidentally shot Pogue in the back at point blank range, causing a "contact wound," when Pogue purportedly "lunged" at Morris and a "struggle ensued." On its face, that conclusion is preposterous.

{¶ 38} In addition, Michael Guy's seven-years-late affidavit is suspicious. Guy's affidavit itself says that his original statements to the police were lies. "I had lied about what happened." *Id.* at ¶ 17. So Guy's original statements must have been different than his current story that Pogue was shot while standing as a result of lunging at Morris. Guy did not testify at the trial. Neither the State nor the defense called him, although he was listed on each of their witness lists. But the trial transcript provides a window to the previous story Guy had told police. In opening statements, Morris's counsel stated the following:

* * * Michael Guy, you're going to hear, is going to say that he went to that house on June 3rd, 2009, without any idea, without any type of consulting with Mr. Morris. Went there to buy some marijuana and that was all that was going to happen. And he's going to tell you that he walked into that house and unbeknownst to him, out of the blue, without any type of provocation, that my client [Morris] pulls a handgun and tells hey, this is a robbery; hey, get down on the ground; hey, this is what's going down and you know it; and hey, you guys are going to die.

That's what Michael Guy is going to tell you.

T. 306.

{¶ 39} "In reviewing petitions for post-conviction relief, a trial court may, in the exercise of its sound discretion, weigh the credibility of affidavits submitted in support of the petition to determine whether to accept the affidavit as true statements of fact." *State v. Thrasher*, 2d Dist., Greene No. 06CA0069, 2007-Ohio-674, ¶ 12 *citing State v. Calhoun*, 86 Ohio St.3d 279, 284, 714 N.E. 2d 905. Michael Guy's affidavit is simply not believable because it is impossible that Pogue was shot in the back at point blank range as a result of lunging at Morris and because Guy previously provided a markedly different story to the police. Reasonable jurors would likely find Guy's current story to be fabricated and they would still have found Morris guilty.

{¶ 40} Most damaging to Morris's petition, however, is his trial testimony and his own affidavit in support of postconviction relief. Morris's testimony at trial was:

Q. Okay. So, what is – what do you see Mikey [Michael Guy] doing at this point in time when you ask for this gun?

A. He – he was giving me the gun.

Q. Okay. And explain what happened.

A. As he was reaching to give me the gun, the gun went off. I never reached the gun though. **But the gun went off. Red [Richard Pogue] was laying on the ground, Boo [Javon Buckman] was laying on the ground.** Everybody still seemed the same and we left.

(Emphasis added.) T. 752.

**{¶ 41}** Morris's trial testimony directly contradicted the story now told in Michael Guy's affidavit. Morris testified Pogue was on the floor when Pogue was shot, not lunging at Morris. Morris testified that he never reached the gun so it must have still been in Guy's possession when it went off. Morris, realizing these discrepancies, tries to claim in his brief that "Guy[']s testimony corroborated the physical evidence in the case which would show that Pogue was shot in the chest and not in the back as indicated in the autopsy and amended autopsy report." Brief of Defendant-Appellant at 11. But the physical evidence, as elaborated upon at the beginning of this opinion, convincingly supported the coroner's testimony that Pogue was shot in the back at point blank range. To further Guy's lunging story, Morris now attempts to change his own sworn trial testimony by a sworn affidavit admitting he committed perjury at the trial.

10. At my trial I testified as to what occurred on this night, but wasn't totally forthcoming because I knew the autopsy report was amended, and I was scared since Michael Guy was not present to tell the truth as to what happened, the jury would not believe me. So I tried to make my testimony conform with the amended autopsy report.

Morris Affidavit ¶ 17. The amended autopsy report says Pogue was shot in the back. So Morris admits he intentionally lied on the witness stand by saying Pogue was on the ground when shot, instead of Pogue being shot in the front while lunging at Morris while on his feet facing Morris. One can reasonably conclude that Morris's postconviction submissions are no more than an attempt at a fraud upon the court by recreating the existing evidence.

{¶ 42} Even if Morris declined to testify in a retrial, either or both of his prior conflicting sworn statements (that Pogue was on the ground when shot rather than lunging, or that Guy, rather than Morris, was holding the gun when it went off) would be admissible in evidence. *State v. Smith*, 12th Dist. Butler No. CA2009-02-038, 2010-Ohio-1721, ¶ 105, *citing Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968) and *State v. Slone*, 45 Ohio App.2d 24, 340 N.E.2d 413 (10th Dist.1975). No reasonable juror would find Morris's changed story to be credible.

{¶ 43} In sum, Morris's postconviction submissions were inconsistent with the physical evidence and inconsistent with Guy's and Morris's previous stories, which are also inconsistent with each other. Morris has simply failed to show by clear and convincing evidence that no reasonable factfinder would have found him guilty. In my opinion, any reasonable juror reviewing the shifting sands presented by Morris's petition would still find him guilty.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Anthony R. Cicero
Hon. Mary Katherine Huffman