[Cite as *State v. Snowden*, 2022-Ohio-4119.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29355 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-1809 |
| | : | |
| DEONTE DWAYNE SNOWDEN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of November, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

DEONTE DWAYNE SNOWDEN, Inmate No. 746-838, Allen-Oakwood Correctional Institution, P.O. Box 4501, Lima, Ohio 45802
        Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Deonte Dwayne Snowden, appeals pro se from a judgment of the Montgomery County Court of Common Pleas overruling his petition for postconviction relief and motion for leave to file a motion for new trial.  For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On July 14, 2016, a Montgomery County grand jury returned an indictment charging Snowden with two counts of felony murder, two counts of felonious assault, one count of having weapons while under disability, and four attendant firearm specifications. The charges stemmed from allegations that on June 6, 2016, Snowden engaged in a physical altercation with William Sarver during which Snowden pulled out a handgun and fatally shot Sarver in the abdomen.  It was alleged that the altercation began while Sarver was outside talking to Snowden's aunt by marriage, Theodora Watson.  Watson and her three grandsons, D.O. (then 16 years old), D.E. (then 13 years old), and D.S. (then 10 years old), witnessed the altercation while they were in a vehicle parked in Watson's driveway.

{¶ 3} Snowden pled not guilty to all the indicted charges and waived his right to a jury trial on the charge for having weapons while under disability.  The charges for felony murder and felonious assault and their attendant firearm specifications were then tried to a jury in November 2017.  The jury could not reach a verdict, and the trial court declared a mistrial.

{¶ 4} Following the mistrial, it was discovered that in late November 2017, Snowden had called D.E. from jail and offered him $2,500 to give testimony at trial that favored Snowden's case. It was also discovered that on November 30, 2017, Snowden had called and asked Watson to change her story regarding the events surrounding Sarver's shooting. After this conduct was discovered, Snowden was additionally charged with one count of bribery in a "B Indictment."

{¶ 5} On July 9 through 11, 2018, Snowden was tried by a jury a second time on the felony murder and felonious assault charges and their firearm specifications. The new bribery charge in the "B indictment" was also tried at that time. Following trial, the jury found Snowden guilty of all the offenses and specifications. The trial court thereafter held a bench trial and found Snowden guilty of having weapons while under disability as well.

{¶ 6} At sentencing, the trial court merged all the felony murder and felonious assault charges and the firearm specifications. Following the merger, the State elected to have Snowden sentenced for felony murder, which carried a mandatory sentence of 15 years to life in prison and a consecutive three-year prison term for the attendant firearm specification. The trial court also sentenced Snowden to three years in prison for having weapons while under disability and ordered that sentence to be served concurrently to the sentence for felony murder. Lastly, the trial court sentenced Snowden to three years in prison for bribery and ordered that sentence to be served consecutively to the sentence for felony murder. Therefore, Snowden received an aggregate term of 21 years to life in prison.

{¶ 7} Snowden appealed from his convictions and raised nine assignments of error for review. The assignments of error concerned: (1) the trial court's failure to suppress cell phone pinging evidence; (2) the trial court's failure to sever the bribery count from the trial of the other offenses; (3) the trial court's evidentiary rulings on certain parts of Watson's trial testimony and the admission of Snowden's jail telephone call to D.E.; (4) whether the jury's verdict was against the manifest weight of the evidence; (5) the trial court's imposition of consecutive sentences; (6) Snowden's present and future ability to pay the financial sanctions imposed at sentencing; (7) whether Snowden received ineffective assistance of counsel; (8) whether the State committed prosecutorial misconduct; and (9) whether the doctrine of cumulative error necessitated the reversal of Snowden's conviction.

{¶ 8} Upon review, this court overruled all of Snowden's assignments of error, except for the one pertaining to the imposition of consecutive sentences. Specifically, we found that the trial court did not make all the required consecutive-sentence findings set forth in R.C. 2929.14(C)(4). As a result, we remanded the matter to the trial court for the sole purpose of resentencing Snowden. In all other respects, Snowden's judgment of conviction was affirmed. *State v. Snowden*, 2019-Ohio-3006, 140 N.E.3d 1112 (2d Dist.) ("*Snowden I*").

{¶ 9} On remand, the trial court held a resentencing hearing and reimposed the same aggregate sentence of 21 years to life in prison while making the required consecutive-sentence findings. Snowden appealed from the trial court's resentencing judgment, which this court affirmed. *State v. Snowden*, 2d Dist. Montgomery No. 28608,

2020-Ohio-5412 ("*Snowden II*").

{¶ 10} While the appeal in *Snowden II* was pending, on April 14, 2020, Snowden filed a pro se petition for postconviction relief and a motion for leave to file a motion for new trial.[1] In the petition and motion, Snowden claimed that he had newly discovered evidence demonstrating that Watson, D.E., and D.S.[2] had lied at his trial and that their testimony had been "coached" by the State. Specifically, Snowden claimed that the newly discovered evidence established that Watson, D.E., and D.S. had falsely testified to seeing him shoot Sarver on the night in question and to D.W.'s being absent during the shooting. (D.W. was Watson's son and the father of D.O., D.E., and D.S.) Snowden also claimed that the newly discovered evidence demonstrated that his trial counsel suppressed evidence provided by a private investigator that established that D.W. and the police coerced D.O., D.E., and D.S. to falsely identify him as the shooter.

{¶ 11} Snowden argued that the false testimony and suppression of evidence had denied him his constitutional rights to compulsory process and effective assistance of counsel. Snowden also claimed that the suppressed evidence was exculpatory and constituted a *Brady* violation that denied him his constitutional right to due process.

---

[1] Snowden's petition for postconviction relief and motion for leave to file a motion for new trial were filed separately, but the petition relies on exhibits that were attached only to the motion for leave and the motion for leave relies on arguments that were raised only in the petition. Although Snowden filed the petition and motion for leave separately, we find that, in the interest of justice and for ease of discussion, it is appropriate to treat them as a combined filing since they were filed on the same day and were based on the same supporting exhibits and arguments. We also reach this conclusion because Snowden stated in the motion for leave that it was "to be read and adjudicated in conjunction with his Petition for [Postconviction] Relief."

[2] The third grandson, D.O., did not testify at Snowden's second jury trial.

Snowden further argued that he had been denied his right to compulsory process because the trial court had failed to admit evidence of a letter written by D.O. on October 30, 2017, wherein D.O. recanted his original statement to police identifying Snowden as the shooter.

{¶ 12} Snowden attached D.O.'s letter and the other "newly discovered evidence" to his petition and motion for leave. The evidence consisted of information contained in affidavits executed by Adale Wilkins, Dayana Snowden, and Ciara Watson. It also included two letters written by private investigator Wayne Miller.[3] The following is a description of the information provided in those documents.

*D.O.'s Recantation Letter*
(Motion for Leave, Exhibit H)

{¶ 13} Prior to Snowden's first trial, D.O. allegedly submitted a handwritten letter to the trial court that was dated October 30, 2017. In the letter, D.O. stated that he had not seen who had a gun or who shot Sarver on the night in question because he was playing on his cell phone and not paying attention. D.O. also stated that his father "has something against [Snowden]" and forced him to lie and say that he saw Snowden with a gun. D.O. also stated that the prosecutors threatened to take him to jail when he tried to

---

[3] In his petition and appellate brief, Snowden refers to Miller's letters as "investigative reports." One of the letters, dated September 24, 2017, was not attached to Snowden's petition or his motion for leave to file a motion for new trial. Instead, Snowden attached the letter to a "Motion for Recusal Relief," which he filed the same day he filed his petition and motion for leave. In the "Motion for Recusal Relief," Snowden stated that the motion was "to be read and adjudicated in conjunction with [his] Petition for Postconviction relief and Motion for New Trial[.]" In the interest of justice, and for ease of discussion, we will proceed as though the September 24, 2017 letter was attached to Snowden's petition and motion for leave.

tell the truth.

*Affidavits of Adale Wilkins and Dayana Snowden*
(Motion for Leave, Exhibits D and E)

{¶ 14} On January 16, 2020, Adale Wilkins and Dayana Snowden executed affidavits averring that in October 2017, they had accompanied D.E., D.S., and the boys' mother, L.R., to a meeting with their attorney. Wilkins and Dayana[4] averred that while waiting for the meeting, they overheard D.E. and D.S. say that they did not know who had shot Sarver and that they had never seen Snowden possess or discharge a firearm on the night in question. Wilkins and Dayana also averred that D.E. and D.S. had indicated that they had been coerced to falsely accuse Snowden of shooting Sarver and that they were afraid to name the person who had coerced them. They further averred that they had been present when D.E., D.S., and L.R. received a speakerphone call from the boys' father, D.W. Wilkins and Dayana both averred that D.W. had angrily shouted at D.E. and D.S. and had told them that they had better say what they had been told to say.

{¶ 15} Wilkins additionally averred that she had relayed all the foregoing information to Snowden's attorney and had advised him that she was willing to testify in court about what she had heard. Dayana additionally averred that she had "personal, firsthand knowledge" of D.O.'s submission of his recantation letter to the trial court judge. Both Wilkins and Dayana also averred that they had listened to the audio recording of the 9-1-1 call made on the night of the shooting and that, in contrast to what the State's

---

[4] We refer to Dayana Snowden by her first name, to avoid confusion with the Defendant-Appellant. Similarly, we will refer to Ciara Watson as Ciara to avoid confusion with Theodora Watson.

witnesses testified to at trial, D.W.'s voice could be heard in the background of the call.

*Affidavit of Ciara Watson*
(Motion for Leave - Exhibit F)

{¶ 16} On December 13, 2019, Ciara Watson executed an affidavit averring that she had been an eyewitness to the physical altercation between Snowden and Sarver.[5] Ciara averred that there had been a small crowd of 10 to 15 people hanging around when the altercation started and that any one of those individuals could have been the shooter. Ciara stated that she was "100% positive" that Snowden had not shot Sarver because she had been trying to stop the fight and standing close to both Snowden and Sarver. Ciara averred that when shots were fired, everyone started running, and that Watson, D.E., and D.S. were not outside during the fighting or the shooting. Ciara further stated that, at the time of the shooting, she had thought someone simply fired shots in the air to break up the fight and did not know that anyone had been shot during the incident. Ciara averred that she had returned home to Michigan the morning after the incident and would have come forward with her information earlier had she known that someone had been shot. In addition, Ciara stated that she was then incarcerated at the Ohio Reformatory for Women.

*September 24, 2017 Letter from Wayne Miller*
(Motion for Recusal – Exhibit A)

---

[5] In her affidavit, Ciara refers to the shooting victim as "Carl Lewis," rather than William Sarver. At Snowden's trial, it was established that Sarver had used the name "Carl Lewis" as a nickname. *See* Trial Tr. Vol. I (July 9, 2018), p. 120. For purposes of consistency, we will refer to the victim as Sarver when discussing Ciara's affidavit.

{¶ 17} On September 24, 2017, private investigator Wayne Miller wrote a letter to Snowden's first trial counsel to provide counsel with an "investigation update." In the letter, Miller wrote that on September 7th, he had received a call from L.R., the mother of D.E. and D.S. Miller reported that during the call, L.R. had told him that her sons had not actually witnessed Sarver's shooting and that she was upset because her sons had given witness statements to the police that indicated otherwise. According to the letter, L.R. also told Miller that the police and her son's grandparents had pressured her sons to make the witness statements at issue. Miller also wrote that L.R. had told him that D.E. had been inside the house telling his father about the fight between Snowden and Sarver when the gunshots were fired and therefore had not seen the shooting.

{¶ 18} Miller's letter further explained that L.R. had never followed up with him at his office the next day as promised, but that he had reached L.R. by telephone on a later date. Miller wrote that during that second call, L.R. told him that her sons had been arrested for not appearing at court as ordered. L.R. also told Miller that her son, D.E., insisted that he did not remember what had happened on the night of the shooting and that the police detectives had shouted at him in a threatening manner and had told him that he had to testify. L.R. further advised Miller that she was considering hiring an attorney to protect her sons because she felt that they might be in jeopardy if they did not testify as the police wanted.

*June 9, 2018 Letter from PI Wayne Miller*
(Motion for Leave - Exhibit G)

{¶ 19} On June 9, 2018, Miller wrote a letter to Snowden's second trial counsel

advising counsel that on June 8, 2018, D.O.'s mother, D.P., had visited him. Miller reported that during the visit, D.P. advised him that D.O. had told her that he, D.E., and D.S. had been inside a house at the time of Sarver's shooting and therefore had not witnessed the shooting. D.P. also advised Miller that D.O. had said that his father, D.W., had instructed him to lie and say that he witnessed the shooting. D.P. further advised Miller about a speakerphone call that she had overheard between D.W. and L.R. during which D.W. said in a threatening manner that D.O., D.E., and D.S. had better say what he had told them to say. D.P. also specifically claimed that D.W. had instructed D.O., D.E., and D.S. to say that they had witnessed Snowden shoot Sarver. Miller further reported that D.P. had told him that D.W. had said that he had not been present at the time of the shooting, but that D.W.'s voice could be heard in the background of the 9-1-1 call that was made on the night of the shooting.

*The State's Response and the Trial Court's Decision*

**{¶ 20}** In response to Snowden's petition for postconviction relief, the State argued that the trial court lacked jurisdiction to rule on the petition because it was untimely and because the untimeliness could not be excused, given that Snowden had failed to establish that he had been unavoidably prevented from discovering the alleged new evidence on which his petition was based. As for the motion for leave to file a motion for new trial, the State similarly argued that the time for filing such a motion had expired and that Snowden's motion for leave failed to establish that he had been unavoidably prevented from discovering the new evidence on which he would have based his motion

for new trial.

{¶ 21} After taking the matter under advisement, on April 9, 2021, the trial court issued an entry overruling Snowden's petition and motion for the reasons argued by the State. Snowden now appeals from that decision, raising five assignments of error.

**First, Second, Third, and Fourth Assignments of Error**

{¶ 22} Under his first four assignments of error, Snowden raises several overlapping arguments, most of which are reiterations of the arguments raised in his petition for postconviction relief and motion for leave to file a motion for new trial. Upon review, we construe these assignments as arguing that the trial court erred by failing to find that Snowden had been unavoidably prevented from discovering the evidence on which his petition and motion for leave were based, and that said evidence had required the trial court to hold an evidentiary hearing on his petition and to grant him leave to file a motion for new trial.

*Petition for Postconviction Relief*

{¶ 23} When a defendant has pursued a direct appeal of his or her conviction, as Snowden did, a petition for postconviction relief must be filed no later than 365 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication." R.C. 2953.21(A)(2). Trial courts lack jurisdiction to consider an untimely or successive petition for postconviction relief unless the untimeliness is excused under R.C. 2953.23(A). *State v. Morris*, 2d Dist.

Montgomery No. 27875, 2018-Ohio-4527, ¶ 16.

{¶ 24} R.C. 2953.23(A)(1)(a) allows a trial court to consider an untimely, successive petition if the petitioner shows that: (1) he was unavoidably prevented from discovering the facts upon which he relies to present his claim for relief; or (2) the United States Supreme Court recognized a new federal or state right that applies retroactively to his situation, and his petition asserts a claim based on that right. *State v. Baker*, 2d Dist. Montgomery No. 27596, 2017-Ohio-8602, ¶ 13, citing R.C. 2953.23(A)(1)(a). "The petitioner must also show by clear and convincing evidence that, if not for the constitutional error from which he suffered, no reasonable factfinder would have found him guilty." *Id.*, citing R.C. 2953.23(A)(1)(b).

{¶ 25} "This court reviews the denial of a petition for post-conviction relief for which no hearing was held under an abuse-of-discretion standard." *State v. Crossley*, 2d Dist. Clark No. 2020-CA-10, 2020-Ohio-6640, ¶ 17, citing *State v. Harden*, 2d Dist. Montgomery No. 23617, 2010-Ohio-3343, ¶ 10. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. An abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "[W]hen a trial court lacks jurisdiction to hear a petition under R.C. 2953.23(A)(1), it is not an abuse of discretion to not conduct an evidentiary hearing." (Citations omitted.) *State v. Stefan*, 8th Dist. Cuyahoga No. 108487, 2020-Ohio-1276, ¶ 29.

{¶ 26} In this case, the record establishes that Snowden's petition for postconviction relief was untimely. Snowden filed the trial transcript in his direct appeal on September 20, 2018, meaning that he had until September 20, 2019, to file his petition. Snowden, however, filed his petition on April 14, 2020, approximately seven months after the statutory deadline. Therefore, for the trial court to have had jurisdiction to review the petition, Snowden had to show either that he had been unavoidably prevented from discovering the facts upon which he relied to present the claims in his petition for postconviction relief or that the claims in the petition were based on a new or federal or state right that applied retroactively to him.

{¶ 27} In this case, Snowden's petition was not based on a new federal or state right but on alleged newly discovered evidence set forth in affidavits executed by Adale Wilkins, Dayana Snowden, and Ciara Watson, and letters written by D.O. and private investigator Wayne Miller. Accordingly, Snowden was required to show that he had been unavoidably prevented from discovering the information in those affidavits and letters.

{¶ 28} " 'The phrase "unavoidably prevented" in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence.' " *State v. Oglesby*, 2d Dist. Montgomery No. 27626, 2018-Ohio-871, ¶ 13, quoting *State v. Turner*, 10th Dist. Franklin No. 06AP-876, 2007-Ohio-1468, ¶ 11. A defendant fails to satisfy this requirement when the facts the defendant relied upon in his petition "were in existence and discoverable well before the time of his trial." *State v. McCleskey*, 2d Dist. Montgomery No. 17419, 1999 WL 218168, *1 (April 16, 1999).

{¶ 29} Also, "[t]he affidavit of a witness who is 'known to the defense at trial' does not fall under the exception of R.C. 2953.23(A)(1)(a) as evidence that the defendant was unavoidably prevented from discovering." *Turner* at ¶ 17, quoting *State v. Stanishia*, 10th Dist. Franklin No. 03AP-476, 2003-Ohio-6836, ¶ 16. For example, a defendant is not unavoidably prevented from discovering the facts in an affidavit when the affiant was on a witness list and subpoenaed to testify at trial. *See Stanishia* at ¶ 16, citing *State v. Saban*, 8th Dist. Cuyahoga No. 73647, 1999 WL 148482, *5 (Mar. 18, 1999). "Also, information contained in an affidavit that establishes facts discoverable before trial fails to satisfy R.C. 2953.23(A)(1)(a)." (Citation omitted.) *Turner* at ¶17.

{¶ 30} Upon review, we find that Snowden failed to allege any facts establishing that he was unavoidably prevented from discovering the information in the three affidavits attached to his petition. Regardless, Snowden was not unavoidably prevented from discovering that information because all three affiants were known to Snowden prior to his trial. Specifically, the record establishes that the affiants were on witness lists that Snowden filed in advance of his trials. *See* Dkt. Nos. 82, 143, and 206. The affiants were also subpoenaed to appear at court for at least one of Snowden's trials. *See* Dkt. Nos. 38, 203, and 205.

{¶ 31} In addition, affiants Adale Wilkins and Dayana Snowden both averred to information that they had known well before Snowden's trial—information which Snowden could have discovered using reasonable diligence since Wilkins and Dayana were known to Snowden. Affiant Ciara Watson's information also could have been discovered using reasonable diligence, as the record indicates that Ciara had not only been a known

defense witness, but that she had been interviewed by the police and that her police interview had been turned over to the defense in discovery. *See* Dkt. No. 236. The record also establishes that Snowden made phone calls to Ciara from jail. *See Id.* Because all three affiants were known to Snowden prior to trial, Snowden was not unavoidably prevented from discovering the information in their affidavits and could have learned about it well before his trial.

{¶ 32} The record also establishes that Snowden was not unavoidably prevented from discovering D.O.'s recantation letter and that Snowden failed to allege any facts establishing otherwise. As previously discussed, the letter was dated October 30, 2017, meaning that it had been written a month before Snowden's first trial and eight months before his second trial. Furthermore, Dayana Snowden, who was known to Snowden, averred to having personal, firsthand knowledge of D.O.'s writing the letter and submitting it to the trial court. D.O. was also known to Snowden prior to trial, as he was listed as a State's witness, subpoenaed to appear at both of Snowden's trials, and testified at Snowden's first trial but not at his second. *See* Dkt. Nos. 142, 123, 199, and 213; Trial Tr. Vol. II (Nov. 27, 2017), p. 175-195. For all these reasons, we find that Snowden could have, through reasonable diligence, discovered D.O.'s recantation letter prior to trial.

{¶ 33} It is also worth noting that Snowden raised an ineffective assistance claim based on D.O.'s letter in his direct appeal and attached the letter to his appellate brief filed on January 14, 2019. *See Snowden I*, 2019-Ohio-3006, 140 N.E.3d 1112, at ¶ 100. This court issued its opinion on Snowden's direct appeal two months prior to the petition's filing deadline, and in that opinion, we specifically advised Snowden that D.O.'s letter was

outside the record on appeal and that a petition for postconviction relief was the proper avenue for raising an ineffective assistance claim based on the letter. *Id.* Despite having all this information, Snowden still did not file a timely petition based on D.O.'s letter.

{¶ 34} The two letters written by private investigator Miller are the only items of alleged "newly discovered evidence" for which Snowden provides some explanation about why he had been unavoidably prevented from discovering them. Specifically, Snowden claims that his trial counsel "suppressed" the information in the letters because counsel did not provide him with the letters until December 19, 2019. However, even if we were to accept that Snowden did not know about the letters until December 19, 2019, the fact remains that Snowden had not been unavoidably prevented from discovering the information contained in the letters; both letters contain information provided to Miller by D.P. and L.R.—individuals who were listed as defense witnesses and known to Snowden prior to his trial. Moreover, the pertinent information set forth in the letters mirrored the information that was provided in the affidavits and D.O.'s recantation letter, i.e., that D.O., D.E., and D.S. had not witnessed the shooting and had been coerced to identify Snowden as the shooter.

{¶ 35} Even if we were to assume that Snowden was unavoidably prevented from discovering Miller's letters due to his trial counsel's withholding them, Snowden has not demonstrated by clear and convincing evidence that, but for counsel's alleged ineffective assistance, no reasonable factfinder would have found him guilty at trial as required by R.C. 2953.23(A)(1)(b). Therefore, Snowden failed to satisfy either of the requirements

under R.C. 2953.23(A)(1). Because of this failure, the trial court did not have jurisdiction to consider Snowden's untimely petition for postconviction relief and thus did not abuse its discretion by overruling Snowden's petition without an evidentiary hearing.

*Motion for Leave to File Motion for New Trial*

{¶ 36} Under Crim.R. 33(B), a motion for a new trial on account of newly discovered evidence must be filed within 120 days after the verdict. If, as here, the 120-day period has expired, the defendant must first seek leave of the trial court to file a delayed motion for a new trial. *State v. Harwell*, 2d Dist. Montgomery No. 28104, 2019-Ohio-643, ¶ 16. "To obtain leave, [a] defendant must demonstrate by clear and convincing evidence that he or she was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B)." (Citations omitted.) *State v. Warwick*, 2d Dist. Champaign No. 2001-CA-33, 2002 WL 1585663, *2 (July 19, 2002). "If it is not found that the defendant was unavoidably prevented from discovering the new evidence or from filing his motion for a new trial, the trial court is precluded from considering the untimely motion." (Citations omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 17515, 1999 WL 173551, *1 (Mar. 31, 1999); *State v. Warren*, 2d Dist. Montgomery No. 26112, 2015-Ohio-36, ¶ 13.

{¶ 37} " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' " *State v. Parker*,

178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 16 (2d Dist.), quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984); *State v. Reed*, 2d Dist. Montgomery No. 28272, 2019-Ohio-3295, ¶ 30. "Conversely, a defendant fails to demonstrate that he or she was unavoidably prevented from discovering the new evidence or the basis of the claim when he or she would have discovered that information earlier with due diligence and some effort." (Citations omitted.) *State v. Smith*, 2d Dist. Montgomery No. 28307, 2019-Ohio-3591, ¶ 11.

**{¶ 38}** Like petitions for postconviction relief, "we review a trial court's denial of leave to file a motion for a new trial for an abuse of discretion." *State v. Hayden*, 2d Dist. Montgomery No. 29490, 2022-Ohio-3574, ¶ 14, citing *State v. Devaughns*, 2d Dist. Montgomery No. 25826, 2015-Ohio-452, ¶ 15.

**{¶ 39}** Here, Snowden's motion for leave to file a motion for new trial was based on the same affidavits and letters attached to his petition for postconviction relief. As previously discussed, those affidavits and letters contained information that Snowden could have discovered before his trial in the exercise of reasonable diligence. As a result, we find that Snowden's motion for leave failed to clearly and convincingly establish that Snowden had been unavoidably prevented from discovering the information at issue within the time prescribed by Crim.R. 33(B). Accordingly, the trial court did not abuse its discretion by overruling Snowden's motion for leave to file a motion for new trial.

**{¶ 40}** Snowden's first, second, third, and fourth assignments of error are overruled.

## Fifth Assignment of Error

{¶ 41} Under his fifth assignment of error, Snowden argues that his petition for postconviction relief was not untimely because his resentencing in 2020 created a new judgment that restarted the clock for purposes of filing a petition for postconviction relief. This argument lacks merit; this court has previously explained that "a resentencing hearing does not restart the clock for postconviction relief purposes in relation to any claims attacking the *conviction* underlying the sentence." (Emphasis sic.) *State v. Yates*, 2d Dist. Montgomery No. 25308, 2013-Ohio-3388, ¶ 9, citing *State v. Dawson*, 2d Dist. Greene No. 2012-CA-54, 2013-Ohio-1817, ¶ 11-13. Here, Snowden's petition challenged his original conviction, not his resentencing. Therefore, the time limit for filing a petition for postconviction relief ran from the original appeal of Snowden's conviction. *See Dawson* at ¶ 11.

{¶ 42} As previously discussed, Snowden was required to file his petition no later than 365 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication." R.C. 2953.21(A)(2). In this case, Snowden filed the trial transcript in his direct appeal on September 20, 2018, and thus had until September 20, 2019, to file his petition. Snowden filed his petition approximately seven months later on April 14, 2020. Therefore, Snowden's petition was untimely.

{¶ 43} Snowden's fifth assignment of error is overruled.

## Conclusion

{¶ 44} Having overruled all of Snowden's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Deonte Dwayne Snowden
Hon. Robert G. Hanseman